UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Polaris Industries, Inc.,

        Plaintiff,

v.

BRP US Inc. and Bombardier
Recreational Products, Inc.,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-01405 ADM/SER

---

Anthony R. Zeuli, Esq., Tong Wu, Esq., and Thomas J. Leach, Esq., Merchant & Gould P.C., Minneapolis, MN, on behalf of Plaintiff.

Harry C. Marcus, Esq., and Joseph A. Farco, Esq., Locke Lord LLP, New York, NY; and Kevin D. Conneely, Esq., Leonard Street and Deinard, P.A., Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On October 17, 2012, the undersigned United States District Judge heard oral argument on Defendants BRP US Inc.'s and Bombardier Recreational Products, Inc.'s Motion to Stay Pending Inter Partes Reexaminations of U.S. Patent Nos. 7,854,285 and 8,151,923 [Docket No. 25].  For the reasons stated herein, the motion to stay is granted.

## II. BACKGROUND

Plaintiff Polaris Industries, Inc. ("Polaris") is a Delaware corporation with its principal place of business in Medina, Minnesota.  Compl. [Docket No. 1] ¶ 1.  Among other recreational vehicles, Polaris develops, manufactures, and markets snowmobiles.  Id. ¶ 9.  On December 21, 2010, Polaris obtained United States Patent No. 7,854,285 (the "'285 patent"), associated with rear suspension technology for snowmobiles.  Id. ¶ 12; Answer and Countercl. [Docket No. 23] ¶ 12.  On April 10, 2012, Polaris obtained a second patent, United States Patent No. 8,151,923 (the

"'923 patent"), also related to this technology. Compl. ¶ 13; Answer and Countercl. ¶ 13. Polaris claims the designs related to these patents improve rider comfort over rough terrain. See Compl. ¶¶ 10-11.

Defendant BRP US Inc. is the wholly-owned domestic subsidiary of Defendant Bombardier Recreational Products, Inc. (collectively "BRP"), a Canadian recreational vehicle company. BRP designs, manufactures, and markets the "Ski-Doo" line of snowmobiles and is a competitor of Polaris. Compl. ¶ 6; Answer and Countercl. ¶¶ 2, 6. In February 2011, BRP introduced a rear suspension technology for snowmobiles it calls "rMotion." Compl. ¶ 14; Answer and Countercl. ¶ 14. In March 2011, Polaris contacted BRP and informed BRP of its '285 patent. Compl. 15 ¶; Answer and Countercl. ¶ 15. Polaris alleges BRP's "rMotion" suspension technology infringes on both the '285 patent and the '923 patent, the latter of which Polaris had applied for had but not yet received in March 2011. Compl. ¶ 15.

On June 5, 2012—one week before Polaris filed the Complaint in this action—BRP filed requests for inter partes reexaminations of the '285 and '923 patents with the United States Patent and Trademark Office ("PTO"). Decl. Joseph A. Farco [Docket No. 28] ("Farco Decl.") Exs. 3-4. The PTO granted BRP's requests for reexaminations of the '285 and '923 patents on July 6, 2012, and July 30, 2012, respectively. Farco Decl. Exs. 5, 7. At the same time that it granted these requests, the PTO issued initial Office actions rejecting certain of Polaris' patent claims. Farco Decl. Exs. 6, 8. On August 31, 2012, BRP filed a motion to stay this litigation pending the completion of the PTO's reexaminations of the '285 and '923 patents. Defs.' Mot. Stay [Docket No. 25].

### III.  DISCUSSION

#### A.  Standard for Stay Pending Reexamination

District courts have the "inherent power to manage their dockets and stay proceedings," including the authority to order a stay of litigation pending the reexamination of a patent by the PTO.  Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted); see also Proctor & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 848-49 (Fed. Cir. 2008).  Whether to stay litigation pending the conclusion of a reexamination is within the district court's discretion, even where the PTO has already granted the request for reexamination.  See, e.g., Pay Child Support Online Inc. v. ACS State & Local Solutions, Inc., No. Civ.02-1321, 2004 WL 741465, at *4-5 (D. Minn. Apr. 5, 2004).

When evaluating a request to stay litigation pending a patent reexamination by the PTO, district courts generally consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in the litigation and facilitate the trial of that case; and (3) whether discovery is complete and a trial date is set."  Honeywell Int'l, Inc. v. Furuno Elec. Co. Ltd., No. 09-3601, 2010 WL 3023529, at *2 (D. Minn. July 30, 2010) (citing 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC, No. 03-3364, 2005 WL 2216317, at *1 (D. Minn. Sept. 8, 2005)).

#### B.  Application of Factors

##### 1.  Undue prejudice or clear tactical disadvantage

In evaluating this first factor, courts have taken a practical approach to determining whether the non-movant will suffer undue prejudice from a stay.  A court may deny a request for a stay where the movant has unjustifiably delayed seeking reexamination, or where the stay will

do nothing but delay the proceedings.  Ecolab, Inc. v. FMC Corp., No. 05-831, 2007 WL 1582677, at *1 (D. Minn. May 30, 2007) (citations omitted).  Courts may also decline to order a stay where money damages would not sufficiently compensate a plaintiff for the alleged infringement.  See Hansen Mfg. Corp. v. Enduro Sys., Inc., No. 11-4030, 2012 WL 381238, at *5 (D.S.D. Feb. 6, 2012) (slip copy).  Conversely, the first factor will favor a stay where the movant promptly moved for reexamination and has not used dilatory tactics or demonstrated bad faith.  See Honeywell, 2010 WL 3023529, at *2.

In this case, the first factor heavily favors BRP.  Polaris argues that the inter partes reexamination process will take an unusually long period of time, but Polaris' estimate of the reexamination process is speculative.  In addition, Polaris has not offered evidence beyond conclusory assertions that it will suffer a loss of market share not compensated by money damages.  In BRP's favor, BRP filed timely requests for reexamination, and Polaris has not shown the use of dilatory tactics by BRP.

Regarding the length of the reexamination process, Polaris argues that the recent influx of requests for reexamination at the PTO will cause extraordinary delay.  The Leahy-Smith America Invents Act (the "Act") amended the inter partes reexamination process for all requests filed after September 15, 2012.  Pl.'s Mem. Opp'n Mot. Stay [Docket No. 32] ("Pl.'s Opp'n") 6; Leahy-Smith America Invents Act, Pub. L. No. 112-29, sec. 35, 125 Stat. 284, 341 (2011).  Because of this deadline, the PTO received an unusually large volume of reexamination requests in September 2012.  Decl. Anthony R. Zeuli [Docket No. 33] ("Zeuli Decl.") Ex. F.  At oral argument, Polaris argued that this high volume of requests will cause the  PTO's reexaminations of the '285 and '923 patents to extend to 7 to 10 years.

However, the actual effect of the Act on the PTO's reexamination process remains to be seen. See Inogen, Inc. v. Inova Labs, Inc., No. SACV 11–1692–JST, 2012 WL 4748803, at *3 (C.D. Cal. Mar. 20, 2012) (noting reluctance to rely on current reexamination statistics given the Act's amendments). The court in Inogen posited that because the Act raised the threshold for granting requests for inter partes reexaminations (termed "inter partes reviews" under the Act), the PTO may actually grant fewer requests in the future. Id. Given the uncertainty of the PTO's future workload, Polaris has not provided persuasive evidence that the reexaminations of the '285 and '923 patents will be pending for nearly a decade. On the other hand, BRP promptly requested the reexaminations after the dispute between the parties emerged, and BRP has not engaged in improper litigation tactics that might otherwise warrant declining a request for a stay.

Regarding Polaris' claim that money damages are insufficient, Polaris has not offered any evidence that a stay will unduly harm its position in the marketplace. Polaris offers only conclusory assertions that BRP's sales of allegedly-infringing products are "potentially" displacing Polaris sales. Pl.'s Opp'n at 11. Without more, such assertions do not demonstrate undue prejudice. Inogen, 2012 WL 4748803, at *3. For instance, in Hysitron v. Inc. v. MTS Sys. Corp., No. 07-CV-01533, at *5 (D. Minn. June 26, 2007), the plaintiff introduced evidence of underselling by the allegedly-infringing defendant, which resulted in untenable market pressure. Here, Polaris has offered no evidence of underselling or any other market pressure. And unlike in IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1032-33 (C.D. Cal. 2005), the Court here does not face "myriad issues" that would inevitably remain after the reexaminations. On the contrary, the parties' claims relate exclusively to the patents at issue. If Polaris is entitled to damages for loss of market share from BRP, those damages will continue to

accrue during the stay of this litigation.

**2. Simplification of issues**

The second factor for determining the appropriateness of a stay also favors BRP. BRP contends that unlike an ex parte reexamination, the already-granted requests for inter partes reexaminations will have a preclusive effect on BRP's invalidity arguments. Defs.' Reply Supp. Mot. Stay [Docket No. 35] ("Defs.' Reply") 3-4; 35 U.S.C. § 315(c) (2011).[1] If the PTO upholds some or all of the reexamined claims, BRP will be estopped from asserting any invalidity argument it "raised or could have raised during the inter partes reexamination proceedings." § 315(c). Alternatively, if the PTO invalidates some or all of Polaris' patent claims, the reexaminations could eliminate issues of validity and infringement altogether. Middleton, Inc. v. Minnesota Mining & Mfg. Co., No. 4:03-CV-40493, 2004 WL 1968669, at *10 (S.D. Iowa Aug. 24, 2004) (citations omitted). In either scenario, or in some combination of both, the PTO's reexaminations will simplify the issues at trial.

The simplification of issues may also reduce this litigation's duration and mitigate any delay Polaris suffers from a stay. Should the reexaminations reduce or eliminate issues for trial, the amount of necessary discovery in the litigation will decrease, and the scope of all subsequent proceedings, including the claim construction hearing, will also narrow. See Watlow Elec. Mfg. Co. v. Ogden Mfg. Co., No. 4:05CV2094, 2006 WL 1892546, at *2 (E.D. Mo. July 10, 2006) (citing Tap Pharm. Prods., Inc. v. Atrix Labs, Inc., No. 03 C 7822, 2004 WL 422697, at *1 (N.D.

---

[1] The parties do not appear to dispute the June 5, 2012, filing date of BRP's requests for reexaminations of the '285 and '923 patents. Because BRP filed these requests before the Act took effect on September 16, 2012, the Court applies the version of § 315(c) then in effect. See Leahy-Smith America Invents Act, sec. 35.

Ill. Mar. 3, 2004)).

Polaris argues BRP may later introduce prior art it did not submit to the PTO for the '285 and '923 patent reexaminations, thereby allowing BRP a chance to circumvent § 315(c).  Pl.'s Opp'n at 8-9.  BRP concedes that the discovery of additional prior art after the reexaminations are concluded may allow it to raise new claims of invalidity, but BRP argues that the assumption it is withholding relevant prior art is improper.  Defs.' Reply at 3-4.  Section 315(c) allows the party requesting reexamination to raise new claims of invalidity only if the requester discovers prior art that was previously unavailable to both itself and the PTO.  Polaris has not offered any evidence to support a conclusion that BRP is "gaming" the reexamination process.  If BRP later attempts to offer prior art it should have had previous access to, Polaris may assert estoppel and seek to preclude any related invalidity claims.  See, e.g., Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc., 592 F. Supp. 2d 1208, 1216-18 (N.D. Cal. 2008).

### 3.  Stage of litigation

The final factor also favors BRP.  Courts hesitate to stay litigation where the case has proceeded through discovery or even reached the "trial ready" phase.  See, e.g., Ecolab, 2007 WL 1582677, at *2-3.  In this case, litigation between the parties has barely begun.  The Court has not issued a scheduling order under Federal Rule of Civil Procedure Rule 26(f), and neither party claims to have served or responded to any discovery.  The posture of this case is different than that in Ecolab, where litigation had proceeded for over two years and "nothing [was] left but to try the case."  Id. at *2.  A stay in this case promotes judicial efficiency.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendants' Motion to Stay Pending Inter Partes Reexaminations of U.S. Patent Nos. 7,854,285 and 8,151,923 [Docket No. 25] is **GRANTED**.

                                                BY THE COURT:

                                                s/Ann D. Montgomery
                                            ANN D. MONTGOMERY
                                            U.S. DISTRICT JUDGE

Dated:  October 29, 2012.